UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JONATHAN GOSS,
        Plaintiff,

v.                                                                C.A. No. 15-555-M-PAS

UMICORE USA INC.,
        Defendant.

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Umicore USA Inc. ("Umicore") submits its reply memorandum in support of its motion for summary judgment (ECF Nos. 22-1 and 23).

In its motion for summary judgment, Umicore has argued why it should be granted summary judgment regarding the FMLA and RIPFMLA claims pled in Plaintiff Jonathan Goss' ("Goss") complaint, which relate to two distinct time periods when he was absent from work: (1) between December 11 and 13, 2013 (pled in Goss' complaint as the "First Medical Leave-of-Absence") (ECF No. 1-1 at ¶ 9) and (2) starting on December 27, 2013 (pled in Goss' complaint as the "Second Medical Leave-of-Absence") (ECF No. 1-1 at ¶ 15).

Umicore has also filed opposition papers arguing why the Court should deny Goss' motion for partial summary judgment, which relates only to the second absence period. (Filed on July 7, 2017). Goss has not moved for summary judgment relating to the first absence period. (ECF No. 25-1 at p. 18).

**I.    Goss Did Not Suffer From A "Serious Health Condition" During His Absence From Work Between December 11 and 13, 2013.**

A "serious health condition" includes an illness resulting in more than three days of incapacity and requiring treatment at least two times by a health-care provider or a regimen of continuing treatment under the supervision of the health care provider. 29 U.S.C. § 2611(11); 29

C.F.R. § 825.114(a)(2)(i). While the definition is broadly worded, the FMLA is not intended to cover all medical conditions. "With respect to an employee, the term 'serious health condition' is intended to cover conditions or illnesses that affect an employee's health to the extent he or she must be absent from work on a recurring basis or for more than a few days for treatment or recovery." H.R. Rep. No. 103-8(I), 103d Cong. 1st Sess., 1993 WL 30770 at *40 (1993). The Department of Labor's regulations define "continuing treatment" as involving both a period of incapacity and subsequent treatment. 29 C.F.R. § 825.115. "Incapacity" means "inability to work … due to the serious health condition, treatment therefore, or recovery therefrom." § 825.113(b). "Treatment" includes "examinations to determine if a serious health condition exists and evaluations of the condition." § 825.113(c). "The employer must be made aware that the absence is due to a serious illness so the employer can distinguish it from ordinary sick days." Rask v. Frensenius Med. Ctr., 509 F.3d. 460, 472 (8th Cir. 2007).

As matter of law, Goss cannot show that his three-day absence between Wednesday, December 11, 2013 and Friday, December 13, 2013 due to bronchitis was related to a "serious health condition." Goss' complaint states that "[o]n December 11, 2013, Goss became physically incapacitated with *bronchitis* for a period of three (3) consecutive days (the 'First Medical Leave-of-Absence')." (ECF No. 1-1 at ¶ 9). Goss has not amended his Complaint to allege anything other than he was incapacitated for just three days, even though he now claims in opposition to Umicore's summary judgment motion that he was incapacitated for five days (including the weekend through Sunday, December 15).

Goss' current contention is inconsistent with the physician's note written by Dr. Aida Martinez of Southcoast Physician's Services. (ECF No. 23-1 at p. 58). On Friday, December 13, Dr. Martinez wrote that she saw Goss two days earlier on Wednesday, December 11 for an "upper respiratory infection" and requested that Umicore "excuse his absence from 12/11-12/13

2

due to this illness." By the time that she wrote the note on Friday, Dr. Martinez had concluded that Goss was "able to return to work for his next scheduled day without restriction." The note does not indicate anything about Goss' incapacitation extending beyond Friday and into the weekend. There is nothing in the record indicating that Goss required any follow-up treatment for bronchitis after he saw Dr. Martinez just once on Wednesday, December 11.[1]

Similarly, the text messages that Goss and his supervisor Su Kue ("Kue") exchanged between Wednesday, December 11 and Friday, December 13 concerned Goss' condition over those three days. (ECF No. 23-1 at p. 62). In his last text sent on Friday, December 13, Goss reported that he could barely get out of bed that morning and the two prior mornings, but he also informed his supervisor that he would be back in work on Monday when he would present his doctor's note. (Id.).

When Goss returned to work, he provided Dr. Martinez's note to Umicore informing his employer that he was able to work "without restriction." Based upon the text messages exchanged between Goss and Kue and Dr. Martinez's note, Goss provided Umicore with notice, at most, that he was "incapacitated" for just three days between Wednesday, December 11 and Friday, December 13.

As noted in Umicore's initial memorandum, many courts have held, as a matter of law, bronchitis is not a "serious health condition" under the FMLA absent "extraordinary circumstances" See, e.g., Dalton v. ManorCare of West Des Moines, 782 F.3d 955, 961 (8th Cir. 2015) (bronchitis is "a short-term condition" Congress did not intend the FMLA to cover);

---

[1] As Umicore addresses in its opposition to Goss' partial summary judgment motion, Goss improperly relies upon a demand letter dated January 31, 2014 that his attorney sent to Umicore. Yet, even the demand letter contradicts Goss' current claim about the length of his incapacitation due to bronchitis. The demand letter stated that "[b]eginning on December 11, 2013, Mr. Goss became incapacitated with *bronchitis* for three consecutive days." (ECF No. 25-2 at p. 178).

Schaub v. Fulton Precision Indus., 2005 U.S. Dist. LEXIS 49696, 2005 WL 1143321, * 4 (M.D. Pa. 2005).  There were no such extraordinary circumstances here.  At most, Goss could not work for three days and, on the third day, his treating physician wrote that he could return to work "the next scheduled day without restriction."

Even if Goss' alleged incapacitation spanned into Saturday, December 14 and through Sunday, December 15 (which is not supported by any medical evidence), it still does not help him to avoid summary judgment.  One of the cases relied upon by Goss, Basso v. Potter, 596 F. Supp. 2d 324 (D. Conn. 2009)), rejected an employee's claim that a five-day absence for bronchitis qualified for FMLA protection.  The Connecticut Federal District Court ruled that the definition of a "serious health condition" requires more than just a period of incapacity beyond three consecutive days.  Id. at 342.  There must also be record evidence of multiple medical treatments or periods of incapacity.  Id.  For the same reasons that the claim relating to bronchitis failed in Basso, Goss' FMLA and RIPFMLA claims regarding his brief bout with bronchitis fail as a matter of law.  See also Beaver v. RGIS Inventory Specialists, Inc., 144 F. App.'x 452, 456 (6th Cir. 2005) (bronchitis is a short-term illness not covered by the FMLA, especially where a doctor's note stated that the employee would be incapacitated for only a "few days"); Phinzy v. Pharmacare, 569 F. Supp. 2d 512, 521 (W.D. Pa. 2008) (granting summary judgment where bouts of bronchitis did not necessitate periodic visits for treatments and the plaintiff missed only seven days of work for bronchitis over a two-year period).

Finally, Goss claims that he was subject to a "regimen of continuing care" relating to his bout with bronchitis and alludes to his deposition testimony about what he "believes" he may have taken as medication.  (ECF No. 23-1 at p. 16).  Regarding his single visit to Dr. Martinez on December 11, Goss testified at his October 12, 2016 deposition that he "believes" he was "put on steroid," but he cannot currently recall the medication specifically.  (Id.).  He "believe[s] it was

4

prednisone," and he "thinks" it was for a "five-day dosage." (Id.). He also testified that he was given a nebulizer treatment when he saw Dr. Martinez "in the office." (Id). Goss' guesses three years later about what the steroid may have been and how long the dosage may have lasted are too speculative and unsubstantiated to be given any weight. Even if all of this is true, the purported five-day dosage period of the apparently prescribed steroid would have ended on Sunday, December 15 (before Goss returned to work on Monday, December 16). There is nothing in the record indicating that when Goss returned to work, he gave Umicore any notice that he was undergoing any "regimen of continuing treatment" due to bronchitis. Rather, upon his return to work, Goss merely presented a note indicating that he was treated just once during the prior week and was now able to work without restriction. See Brenneman v. MedCentral Health Sys., 366 F. 3d 412, 428 n. 17 (6th Cir. 2004) (holding that plaintiff's later deposition testimony that the doctor prescribed medication was insufficient to provide notice of a "regimen of continuing treatment.").

For the reasons stated in Umicore's initial memorandum and addressed above, Goss' FMLA and RIPFMLA interference claims relating to the so-called "First Medical Leave-of-Absence" between December 11 and 13, 2013 fail as a matter of law.

**II.     Goss Did Not Provide Umicore With Notice Of His Intention To Take A FMLA Leave For His Absence That Started On December 27, 2013.**

Regarding the second absence period, Umicore incorporates its arguments in its initial memorandum in support of its motion for summary judgment (ECF No. 22-1) and its memorandum dated July 7, 2017 opposing Goss' motion for partial summary judgment.

UMICORE USA, INC.

By Its Attorneys,

/s/ Neal J. McNamara
/s/ Steven M. Richard

Neal J. McNamara (#4249)
Steven M. Richard (#4403)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI  02903
Tel: 401-454-1020
Fax:  401-454-1030
nmcnamara@nixonpeabody.com
srichard@nixonpeabody.com

Dated:  July 7, 2017

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that this reply memorandum was filed electronically through the Court's CM/ECF system on this 7th day of July, 2017, which caused a copy to be served electronically upon Plaintiff's counsel:

Mark P. Gagliardi, Esq.
Law Office of Mark P. Gagliardi, LLC
120 Wayland Ave., Suite 7
Providence, RI  02906

/s/ Steven M. Richard

4852-4639-6235.2