UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JONATHAN GOSS,<br>    Plaintiff,<br><br>v.<br><br>UMICORE USA, Inc.,<br>    Defendant. | C. A. No. 15-555-JJM-PAS |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

The question before the Court is how much notice an employee must give in order to invoke the Family and Medical Leave Act and the Rhode Island Parental and Family Medical Leave Act. The simple answer in this case is: a jury should decide.

*Facts*

Jonathan Goss worked as an assistant mold maker and then incoming quality control inspector for Umicore USA, Inc. for three years. Umicore regularly warned Mr. Goss about his absenteeism and tardiness, which, even taking the facts in the light most favorable to him, were excessive. His supervisor warned Mr. Goss that "[f]ailure to show immediate and sustained improvement may result in corrective action up to and including termination of employment." In December of 2013, Mr. Goss had two periods of absence due to illnesses that set the stage for this action.

1

Mr. Goss was out of work from Wednesday, December 11, 2013, through Friday, December 13, 2013, due to bronchitis. He had already used all of his sick time. He texted his supervisor that he had been "up all night coughing and throwing up." The two exchanged text messages the following two days concerning Mr. Goss' medical progress. He returned to work the following Monday and gave his supervisor a doctor's note that said he had had an "upper respiratory infection" but was now cleared to work. The doctor's note was dated Friday, December 13, 2013.

Mr. Goss was late to work the day after he returned from his three-day illness. That week, Umicore issued him a "final written discipline warning for over usage of [his] sick time."

The second period of absence began on Friday, December 27, 2013. On that day, Mr. Goss sent his supervisor a text message indicating: "I know you are not in but not sure who else to text. 103* fever and violently vomiting all night. Physically can't get in. Have flu."[1]

On Monday, December 30, 2013, Mr. Goss sent his supervisor another text message stating in pertinent part: "I'm still having debilitating pain in my stomach. I'm going back to my doctor today. My wife and son are also really sick and I need to take them in to see someone also. Sorry. I'll try to get in tomorrow to help with end of month." Mr. Goss texted later that day:

---

[1] The Court presents the text messages here in a way to make them more reader-friendly. The substance has not been changed.

2

Just got out of doctors – thinks I'm on the mend but still a little dehydrated and said my intestines are inflamed which is why I am in pain and haven't eaten since Thursday. Won't be back until this Thursday. Have to rest and get fluids. I know warning said it was my last but this could not be prevented due to severe illness. I apologize.

On Thursday, January 2, 2014, Mr. Goss sent his supervisor another text message: "I'm still sick and in a lot of pain. Not going to be in today." His supervisor replied the same day, asking how Mr. Goss was doing. In reply, Mr. Goss stated, "Nausea and temp are gone but my stomach is still hurting bad. Just started eating yesterday. Lost about 15 lbs. Gonna try to get in tomorrow if my stomach is ok. Doctor said they can fax my note if I go in." Later that day, Mr. Goss sent his supervisor another text message indicating that he would try to make it in the next day and that he would text his supervisor in the morning and let him know whether he would be in or not.

On Friday, January 3, 2014, Mr. Goss sent another text message indicating that he would be out of work again: "Was up all night with my stomach again. Won't be in today. Will bring the 2 doctor's notes I have from walk-in and my doctor on Monday."

During the next week starting on Monday, January 6, 2014, Mr. Goss sent his supervisor the following text messages:

- Stomach isn't any better. In a lot of pain. Going back to doctor today. Won't be in.
- My doctor was completely booked. I have an appointment at 1:45 tomorrow.
- Just got out of doctors. They ordered a bunch of labs. Don't want me going back until results are in. Trying to rule some stuff out. Keep you posted. At earliest be back Friday.

- Still waiting on results. Still really sick. I had to miss my court date this morning because of my stomach. Be back Monday. Can't afford to miss any more time.

Umicore terminated Mr. Goss' employment effective January 6, 2014, for excessive absenteeism and unauthorized absences.

Mr. Goss filed a two-count lawsuit alleging that Umicore violated the Family and Medical Leave Act ("FMLA") and the Rhode Island Parental and Family Medical Leave Act ("RIPFMLA"). Umicore has moved for summary judgment (ECF No. 22) and Mr. Goss has moved for partial summary judgment (ECF No. 25).

*Standard of Review*

Federal Rule of Civil Procedure 56 governs the summary judgment process. Rule 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." A party is entitled to summary judgment only if two conditions specified in Rule 56 are met: that "no genuine dispute [exists] as to any material fact" and that the undisputed facts demonstrate that the party is "entitled to judgment as a matter of law." *See Knight v. Mills*, 836 F.2d 659, 664 (1st Cir. 1987) (undisputed material facts, together with inferences drawn against the movant, "must lead to one reasonable conclusion in favor of the movant" to justify summary judgment). A material fact is one that "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

4

Summary judgment is a drastic remedy, *Colman v. Faucher*, 128 F. Supp. 3d 487, 490 (D.R.I. 2015), because it deprives the parties of the opportunity to have a jury determine the outcome as enshrined in the Seventh Amendment to the United States Constitution ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."). This is especially true in fact-intense inquiries. Thus, the law requires the Court to draw all reasonable inferences against the moving party and that the Court grant summary judgment if the undisputed facts and inferences that flow from them allow for only one reasonable conclusion in favor of the movant. *Knight*, 836 F.2d at 664 (citing *Anderson*, 477 U.S. at 251). This Court must "tak[e] the facts in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Barraford v. T & N Ltd.*, 778 F.3d 258, 263 (1st Cir. 2015).

*Analysis*

The FMLA "entitles 'an eligible employee . . . to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Germanowski v. Harris*, 854 F.3d 68, 72 (1st Cir. 2017) (alterations in original) (quoting 29 U.S.C. § 2612(a)(1)(D)). "The pertinent regulations place the burden on the employee to notify the employer of the need for such leave." *Id.* (citing 29 C.F.R. § 825.303). "Where the leave is unforeseeable, 'an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case.'" *Id.* (quoting 29 C.F.R. § 825.303(a)). "In providing such notice, the employee must supply 'sufficient information for an

5

employer to reasonably determine whether the FMLA may apply to the leave request.'" *Id.* (quoting 29 C.F.R. § 825.303(b)).

The Court will analyze the two periods when Mr. Goss was absent from work separately.[2]

*First period of absence*

Mr. Goss cannot establish that his December 2013 bronchitis satisfies the statutory definition of "serious health condition." Under the FMLA, "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11); *see also* 29 U.S.C. § 2612(a)(1)(D) (employee with "serious health condition" who cannot perform entitled to leave).

Section A does not apply here because Mr. Goss did not receive inpatient treatment for his bronchitis. Section B does not apply because Mr. Goss cannot establish that his bronchitis involved "continuing treatment by a health care provider." The FMLA regulations define "continuing treatment by a health care provider," in pertinent part, as:

> A period of incapacity of *more than three consecutive, full calendar days*, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care

---

[2] The Court's analysis under the FMLA also applies to Mr. Goss' RIPFLMA claim. *See Deighan v. SuperMedia LLC*, No. 14-264 S, 2016 WL 6988813, at *3 (D.R.I. Nov. 29, 2016). For convenience, the Court will refer only to the FMLA.

6

provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a) (emphasis added).

Mr. Goss does not present any evidence to suggest that he suffered "[a] period of incapacity of more than three consecutive, full calendar days." *Id.* Indeed, the doctor's note provided, "He was seen here in the office on 12/11/13 for upper respiratory infection. Please excuse his absence from 12/11–12/13 due to this illness. He is able to return to work for his next scheduled day without restrictions." This note establishes at most that Mr. Goss was incapacitated for three calendar days, not *more* than three full calendar days, as the definition of "continuing treatment by a healthcare provider" requires. There is simply no evidence to suggest that Mr. Goss suffered a period of incapacity of more than three full calendar days. *See id.* The first period does not implicate the FMLA because it did not last long enough to qualify. This alone is dispositive of Mr. Goss' claims for this initial period.

*Second period of absence*

The question for the Court as to the second period of absence is whether Mr. Goss gave adequate notice to Umicore with "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b). "In order to provide adequate notice, 'an employee must

7

provide his employer with enough information to show that he may need FMLA leave.'" *Martins v. R.I. Hosp.*, No. 11-539 S, 2014 WL 3966294, at *2 (D.R.I. Aug. 13, 2014) (quoting *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005)). "'Although the employee need not name [the FMLA], he must provide information to suggest that his health condition could be serious.'" *Id.* (alteration in original) (quoting *Woods*, 409 F.3d at 990). The sufficiency of the notice "is an intensely factual determination." *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012).

"When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.303(b). Instead, the FMLA requires only that the employee "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." *Id.* "The employee's burden is not heavy." *Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir. 2014). Rather, the employer bears the burden of obtaining any additional required information that may be needed to establish eligibility. 29 C.F.R. § 825.303(b); *see Reeder v. Cty. of Wayne*, 177 F. Supp. 3d 1059, 1071 (E.D. Mich. 2016).

Mr. Goss, on the first day of his sickness, told his employer of the seriousness of his illness (i.e., that he had a 103-degree fever and was "violently vomiting all night"). He followed that up three days later by informing Umicore that he was "still having debilitating pain in [his] stomach." Three days later, after the New Year's holiday, he texted his supervisor that his "stomach [was] still hurting bad.

8

Just started eating yesterday. Lost about 15 lbs." Four days after, he informed his supervisor that his "[s]tomach [was not] any better. In a lot of pain. Going back to doctor today." Finally, on January 7, 2014, he told Umicore that he had just been to the doctor who ordered lab work, and that the doctor informed him that he did not want Mr. Goss going back to work until the results were in.

A reasonable jury could believe these notices contained "sufficient information for an employer to reasonably determine whether the FMLA may apply." 29 C.F.R. § 825.303(b). Mr. Goss stated the serious nature of his condition, details known to him at the time about his condition, and the length – in excess of ten days – of his continued absence. Accordingly, Mr. Goss has raised a genuine issue of material fact as to whether he satisfied the FMLA notice requirements.

*Conclusion*

Umicore's Motion for Summary Judgment (ECF No. 22) is DENIED as to the claim for FMLA and RIPFLMA coverage during the period between December 27, 2013, and January 6, 2014, and GRANTED as to the period between December 11, 2013, and December 13, 2013. Mr. Goss' Motion for Partial Summary Judgment (ECF No. 25) is DENIED.

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge

September 8, 2017

9